Good morning. My name is John Young. I represent Scott Clabourne. Causal connection is an unfair question, and it's always going to be an unfair question. It has a universal application to all mitigation in capital cases, and it provides a universal shortcut for the state. The reason it's unfair is that scientists are just notoriously reluctant to say that anything caused anything else, especially when they're talking about brains. It's very hard to find a psychologist that will say that something caused a particular behavior, and if they do say that something caused a particular behavior, they're probably reaching a bit further than most other psychologists will reach. So underlying this whole argument is an unfair test, and that is the reason that it's unfair, and that is the reason that it works so well for the state, is because they can always ask a psychologist, well, can you say that this problem caused this crime, that this problem caused this behavior? And the answer is always no, and they've caught on that the answer is always no. But I guess short of a causation issue, I noticed that when you were arguing your briefs, you on the one hand would say causation is not relevant, but then when you were trying to argue why it should be given away, you sort of inevitably tried to tie it into the crime. In other words, you never really argued, well, his schizophrenia is a reason why he should get mitigation just because it's unfair because he's just had this terrible problem. You always did try to tie it back by saying, well, this is why he understood Langston to be frightening him. In other words, you do try and use it to explain, in some respects, his rather disturbing explanation for the crime and what he might have understood and so on. So maybe you're saying you couldn't get someone to say the words cause, but you do seem to think that it's important when there's a connection. Right. I think that cause is too much of a test. I think that schizophrenia gives us an understanding, maybe not an explanation, but an understanding, not saying that I condone anything, but maybe it's easier to understand the crime and what happened and to understand Mr. Claiborne. On this issue, isn't your biggest problem that the Arizona Supreme Court did, as to the non-mitigating factor, have a sentence in there where it says he had these personality factors that was connected to his mental health issues? It didn't say the word schizophrenia, but it said mental health. And we're giving it some weight. Well, I don't think that we have to squint too hard at the opinion. We certainly can, but for starters, the Arizona Supreme Court was absolutely crystal clear. In fact, they went to lengths to clarify it, that causal connection does apply to the G1 significant impairment mitigator. Is there anything wrong with that, as long as they don't exclude consideration of the non-statutory factor? No, I think that's all right with respect to the statutory mitigator. But then they split off the non-statutory mitigators, and they start to split up the mitigators themselves. The first one that they look at is mental impairment, and that's in paragraphs 31 and 32 of their opinion, and then they go on to personality. And so the language that was just mentioned is when they discuss personality. No, but in the next sentences, the evidence, I really would like an explanation for this, and I think there may be one, but the next sentences, the evidence shows that these traits are rooted to some degree in his mental health problems. So why is that not sufficient indication that, even though you very persuasively argued that the Arizona Supreme Court at the time was applying, and for many years was applying, to causes of excess testing, everything, including mental health issues, so where does this paragraph fit in? Well, at that point, they're talking about personality disorders instead of thought disorders. The difference is from Axis I to Axis II of the DSM-IV. Axis I would be a clinical diagnostic disorder, such as schizophrenia. Axis II is personality issues. And personality issues are just going to carry a lot less weight. Personalities are not necessarily what save people from being executed. In fact, personalities may be what get people executed. I think with respect to mental impairment, it's important not to interpret the Arizona Supreme Court's decision differently than the Arizona Supreme Court interprets it. As I point out in the reply brief, in Carlson in 2000, the Arizona Supreme Court interprets and cites Claiborne II, the 1999 opinion, for the proposition that, quote, while this impairment did not rise to the level of a statutory mitigator, it could be considered in mitigation to the extent it may have affected defendant's conduct. And just to make it perfectly clear in that cite, as they used to do, they cite specifically to paragraph 31 of the Claiborne II opinion. So our cases, Towery and Shad, seem to say we look at each case on its own. And even, I think it was in Towery, when there's a later Supreme Court case that interprets it differently, we said that doesn't matter. We look at each case on its own. So when we look just at the California Supreme Court decision here, it seems under Shad, they don't say that they're requiring a causal nexus for the non-statutory mitigation. And so we're to presume that they proceed constitutionally. Isn't that what Shad tells us to do? I don't know. I think we can assume that they follow the law. That's a better presumption. And sometimes some of these presumptions have to work in my favor. Presuming that they follow the law. So the law is Eddings and at that point, right? Eddings and Lockett. There's constitutional law, and then there's Arizona law. And I have a couple of embarrassingly long string citations, three and four pages, single-spaced, which is probably not the best practice, but that is what the Arizona law is. A very long string cite of cases saying causal nexus is required and a very long string cite of cases saying causal nexus is required for non-statutory mitigation. How is Shad different, though? It was the same sort of situation where there was Arizona cases before and after, but our presumption was that the Arizona Supreme Court was proceeding constitutionally. And looking just at Shad, that's what, or looking just at that case below, that's what we held. That is what this Court held in Shad. Looking very closely at the case, Shad, I think the Arizona Supreme Court considered what they considered, even though they necessarily didn't have to. But in Claiborne, the distinction that I'm going to put out there is that in Claiborne, in three subsequent cases in 2002 that are cited in my reply brief, the Arizona Supreme Court looked back at Claiborne and cites Claiborne for the proposition that non-statutory mitigation, non-statutory mitigation requires a causal nexus. So, essentially, your explanation for the language would be that he picked out the particular aspects of the mental health evidence, including the schizophrenia, that may have been relevant to his behavior. That's why. I mean, because, see, the thing is that the experts, you say that schizophrenia has nothing to do with these factors, but the experts, some of them testified that it did, actually, that some of the explanation for why he perceived things the way he did around the crime was related to the schizophrenia. Wasn't there some testimony to that effect? They did, and I noticed as I was reading their testimony that their testimony was not quite in line with the DSM-IV as I read it. I'm obviously not trained. I don't think you've got a problem there. So, the one explanation would be, well, they were applying a causal nexus test, which is why they extracted these particular factors and not his more general schizophrenia problems that were in the record, including hearing voices and stuff like that. Before we go too far down that road, and certainly I've got more than one explanation for everything, but before we go too far down that road, the experts that were testifying, we have to keep in mind, had never examined Mr. Claiborne for anything except for competency, and that was an examination of 45 minutes to an hour. But they did testify quite relatively extensively after reviewing records at the evidentiary hearing. They did an extensive records review, and they testified about those records at the evidentiary hearing. And the fact that they hadn't talked to him wouldn't come in at this stage. I mean, there might be another problem down the line, but not on this issue. Right. Well, that's actually my third problem down the line. It's Argument 3, and I didn't think I was going to get to Argument 3. What about Argument 2, which is the confession? Well, the whole Martinez mess, and you can talk about that. Well, that actually works out on my clock here. I'd hope to move on to Martinez after 10 minutes. I think, quite frankly, I was distressed to see that Martinez got to the United States Supreme Court before Scott Claiborne got to the United States Supreme Court. I think Martinez moots the most interesting argument that I had in this case, and that was the Douglas v. California argument. Martinez has come in and quite simply said that initial review I see is cause to excuse procedural default. And that is the way that they addressed that. I think that the facts in this case are far more egregious than the facts were in Martinez. This was blatant sentencing IAC, and it was followed by a complete inability of Mr. Darby to file a meaningful PCR. Five times he tried and five times he failed to file a PCR in a form that the court would even accept. And frankly, the sentencing IAC in this case was not buried that deeply. When I took these boxes over, the first thing I read was this court's 95 decision, and I understood the explanation of Roberson and Edwards and why Edwards could not be applied to the confession in this case. And then the boxes were jumbled up. I want to say the next thing I read was the state's sentencing memorandum. Let me tell you what my two concerns are that would be helpful to me. One is that Martinez, how, this case, maybe it's not a problem in this case, but it seems to me that both our case law and even conceptually, Martinez is quite confusing as to where the plausibility or colorability or even the merits of the trial IAC come in. Because although Martinez seems to be set up so that the trial IAC issue is sort of a second question that has to be determined on a kind of colorability point, in most cases you're not going to be able to decide the PCR IAC and restrict them without getting pretty close to deciding the trial IAC issue. And that's essentially what our Sexton case did. So how does that wash? What do you do with that? Now, maybe it's not a problem in this case because by not being able to file even a coherent Rule 32, it's PCR IAC and nothing else matters. But in general, how does that work? Do you understand the question? I'm not understanding how you can decide usually, and maybe even here, the PCR IAC question without deciding or coming close to deciding the trial IAC issue, and yet Martinez seems to have the trial IAC issue off by itself on a much lower standard. It does. Right. It does. And I think standards aside, when I've got facts like these, I tend to pound the facts. So you're saying this isn't the case to worry about whatever this mess may be? Regardless of the standard, I'm pretty confident here. As to which? As to the trial IAC, the PCR IAC, or the trial IAC? Well, both, really. Well, the PCR IAC may be easy. The trial IAC is not that easy. Maybe it is on the confession question, but what about the prejudice question? Well, it seems to me that the Edwards decision has already been decided by this court, except for the fact that the case was final as to the aggravator for a time. I think when Judge Berzon is referring to the prejudice question, at least as I understand it, the government makes a number of arguments that you couldn't show that, but for the Roberson error, the result would have been different because there was ample evidence even beyond his confession about the conscious suffering of the victim in this case, if I'm understanding the government's argument correctly. That's correct. It would be helpful to me to have that answered in some detail. And one piece of it is there's this interview with this guy, Breshears. I can't understand whether that's even in the record. Neither of you mention it with regard to this prejudice question, but it seemed like the most detailed thing other than the confession, and I need to know where it sits. Well, Mr. Breshears did not testify at the trial or at the sentencing. He was part of the original habeas petition. So that's not part of what got used to impose death in this case. It wasn't, so it's not there. It's not there. Where was it entered into the record? At what point in the proceeding? I believe his interviews were part of the police investigation, and I think that they were taken and made part of the first habeas petition that went to Judge Bilby. But was not before the resentencing court? I thought the whole record before the federal habeas was before the sentencing court. Breshears' statement may have been, and there were five volumes of documents that were admitted at the resentencing. It seems to me to be our biggest problem on the prejudice question, and I can't figure out what its status is. Well, I would say that if resentencing counsel had realized that the confession that they were looking at was not admissible, which was what they had just been told by this court, then they would have realized that they didn't want to buttress any of the details. So it's another instance, I think, maybe, of sentencing. You mean it was attached by the defendant? I think it would have been. Yes, it was not submitted by the state. It would have been part of the defendant's five volumes of exhibits that went to the resentencing court. May be used to show that he was Langston's pawn. I know that was one of the arguments that defense counsel was making. I think that's the direction that they were going. So Europe is basically saying it would be part of the IAC if there were IAC. They shouldn't have done it. I think had they realized. It's third level hearsay, and I couldn't quite understand how it could have gotten in. I think it simply came in because they're really, with respect to mitigation, no evidentiary rules to keep it out. And I think it was submitted by. But you're not sure whether it was actually part of the record or not? As I stand here, I'm not sure. Okay. Leaving it aside, then, can you argue the. . . And is that the question? Or is it sufficient that it might have been given less weight? Well, I think with respect to other evidence of F6 cruelty, the state points to the testimony of Barbara Balin and Shirley Martin, but they really only knew that he had strangled a girl at the urging of others. They didn't have any of the details. What the Arizona Supreme Court really focuses on and what the trial court really focused on were the six-hour ordeal, the repeated rapes, the repeated beatings. And the forensic evidence. Well, these were details that the forensic examiner was not able to provide. So she was able to say that Ms. Webster had been sexually active within the preceding 12 hours. He also said she was beaten. There were bruises before strangulation. There was struggle. She was alive when stabbed through the heart. There was a tremendous struggle, she testified. And then on cross-examination, she clarified her overly helpful testimony. She said the bruises could have been sustained within 12 to 24 hours of her death. She initially said very, very close to the time of death, and then when pinned down to a number by very, very close, she means 12 to 24 hours, which means they could have been there before Ms. Webster even met these three men. With respect to stabbed through the heart while she was still alive, she did clarify that when she was stabbed through the heart, it was this medical examiner's opinion that Ms. Webster was unconscious and that it was only the last, because there was very little bleeding at this point. There was bleeding, so she was able to conclude that the heart was beating, but there was not enough bleeding for her to conclude that this victim was conscious. The struggle is something that I'm anxious to talk about because the struggle is just contrary to the treatise on medical legal investigation of death, which I think probably every criminal defense library has on its bookshelf. Dr. Spitz, in his medical legal investigation of death, talks about the different causes of patechial hemorrhaging. Can we consider this treatise, which as I understand was not part of the record or not part of the case? I think it's certainly a learned treatise. It's certainly deserving of this court's consideration. But does this go back to the procedural posture, which is that this issue was never actually litigated in the state court because of PCR, IAC theoretically, right? Right. And it was never litigated in the trial court because the trial court said that there was a procedural default. So problems with regard to the record on this question are problems that are sort of built into the Martinez question maybe. I mean, what do we do with that? We remand it? What do we do? We start by looking at the Martinez standard, which is simply debatability. And I think there is definitely debatability here. I think there's enough here for the court probably to decide the issue on its own. But I can't think of a tactical reason for a resentencing counsel not to have kept out the confession at resentencing. I understand that. But this kind of issue that you're talking about now, i.e., you're essentially saying, and you've said it in several different ways, that there is evidence that could have been pertinent to the trial IAC issue, including this question, which essentially perhaps turns on prejudice. And therefore, you're saying, well, you could have demonstrated sort of some more trial IAC, i.e., you didn't put on counter evidence to the forensic person. That seems to be what you're saying. I think I could. If I understand the court, my trial IAC is really talking about the resentencing IAC in 1996. I agree. I think I could put on more evidence. And maybe the question then is, does this court decide the underlying IAC claim here, or does this court remand it to the district court? Whatever I argue for, Mr. Zick will probably argue against. That's his job, you know. To me, it just seems like it would save time to get to the bottom of it right here. But then you have a problem if you were going to start putting things outside the record, obviously. Well, these are things that I think are common knowledge or part of scientific treatises. And it also affects how much weight we give to Dr. Rao's testimony on this point. If her testimony is contrary to the generally accepted scientific community, then she may have at the time had a Frey-Daubert problem. At this point, it's just credibility. You don't get to retry the case in front of us or even if we remand it to the district court. We've got a whole set of issues we have to sort through. And so I really have the same concern Judge Berzon has raised with regard to we've got this treatise, but we're not the resentencing court. So you have to portray that as an IAC-type argument for failure to bring it up. But that issue really hasn't been developed. I'm trying to focus on the impact question, the prejudice part. And there's some blurriness as to what the standard is for prejudice. But take me to the decision made by the resentencing court and what that decision, you argue, would have been or how there's a reasonable probability it could have been different if the confession were taken out of the mix. What's left at that point? What's the critical evidence that should cause us to conclude, in your view, that your client was prejudiced by that process? Why isn't there enough with what's left on the table that we should expect the resentencing court to have rendered the same sentence? Well, then we move on to my sixth argument, which is not one that this court was interested in further briefing on. I still feel very strongly about it. The F6 aggravator in Arizona is so broad it includes all conscious victims. And so it is possible, I suppose, that even with the limited evidence of strangulation that's there, without the race... But leaving that aside for now, could you answer Judge Clifton's question? It's the same question I asked you to answer. The state may be able to prove F6 again, but they would prove a lot less F6. It's not enough just to prove F6. I mean, the trial judge, the resentencing court, is supposed to, okay, you tick off a box here, you may or may not tick off... But you still have a decision to make. And we're in the position of trying to evaluate for prejudice. And I'm trying to see, okay, what does this case look like? Assume for the moment the confession gets taken out. Your argument is there's not enough left to give us confidence that the resentencing court would have done the same thing. And it's hard for me as I go through all this evidence, and it's not quite clear to me what's in and what's out and so forth, so I'm asking you to focus me right now on what it is that you think we should be swayed by in concluding that your client was prejudiced by having the confession put in there. Why wouldn't he have been sentenced to the same thing anyway if the confession were taken out? Well, my initial argument is that the state would be unable to prove F6, and without F6 there would be no death penalty. He would not be eligible. Why would they be unable to prove F6? Why isn't what's left enough for that purpose? Because all that's left is that this girl left with these three gentlemen, went to a party. She was sexually active at some time the previous day. They don't know if it was with any of these three gentlemen. They don't know whom it was with. They don't know anything about what happened for the further six hours. They don't know when she would have sustained those bruises. That's a matter of pure speculation. Maybe it's not clear what was in the record and what wasn't, but we do have statements made by our client to other people. We have the forensic examiner's report. We have some bits and pieces, and so I want you to try to go beyond the broad statements of what we don't have. We do have some of those things. Why aren't the pieces that we have enough to establish? Let's take, for example, the 12 to 24 hours. Well, yes, the forensic examiner may be limited to saying the bruises could have been incurred then, but this is somebody who's at a bar. It's not likely she's just been in a street fight when she gets picked up and leaves with these people. So there's a reasonable inference to be drawn. The bruises came during the time, or at least a court could reach that conclusion. Is there any reason to conclude something different on that subject? Would anybody from the bar say, yes, she had a bruise, she'd been in a fight? That would be speculation on the court's part. I wouldn't want to uphold a death sentence. We do that all the time, though. I mean, let's assume we're in a brand-new proceeding, and you've got somebody with a lot of bruises, and the examiner said it could have been happening 24 hours before, but she was in a bar.  Nobody at the bar testifies she had some bruises. Juror or judge, it's likely the inference is going to be, well, the bruises probably came in the time after she left the bar. I mean, that's the reasoning process we use all the time. So I accept the fact that it may not be utterly conclusive, but that's not an unreasonable inference. What is it that we're looking at here? I mean, my problem with this, and if you count it with both sides, is I've come to look at the case, and it's not anybody's fault. Martinez has shifted the boundaries somewhat. But I don't have in front of me developed, clearly for my head at least, what's on the table and what it conclusively shows if you take the confession out of the mix. And that's really the question I'm trying to raise with you. Why is it if you take the confession out, why isn't there still more than enough to justify or explain this sentence? Well, if you take the confession out, the rape certainly comes out. But he testified to other people that he'd had sexual relations with her. He did, but he did not say unconsensual sexual relations. In fact, when he confessed. He didn't say to Dale Stevenson, I guess I have a note here, maybe it's incorrect, that Dale Stevenson overheard Claiborne say, yes, I raped her, she didn't want it, but I know she liked it. That was something in the record. All spoken in pronouns and very frustrating to Mr. Claiborne. This is not what he was talking about. Dale Stevens heard the tail end of a conversation and Mr. Couser just wasn't providing. What about, didn't he say to Shirley Martin something to the effect of she begged me to save her, but I couldn't or something like that? He did say that she asked him for protection from, and this was a very strange comment, she asked him for protection from Mr. Langston. She said she'd been with Langston before. I really don't understand that. And Mr. Claiborne's perceptions are a little bit uncertain. All right, to go back to where I started from, though, if the Brashear's thing is in there and isn't taken out for some other reason, isn't your argument by the boards because it goes, again, it's third-level hearsay, but it goes in an inordinate detail, more than his confession, much more, to everything that happened. I think it goes to different details, and the Brashear's argument would never have been in there if resentencing counsel had been effective and had realized that Claiborne's confession shouldn't be in there. Okay, you're out of time, and we'll give you a couple of minutes to rebuttal. Thank you. May it please the Court, my name is Jeff Zick, and I represent respondents at Belize in this matter. I think what I'd like to do is start with the Martinez issue, because that seems to be the most troubling issue in this case. We've made arguments in our supplemental answering brief that Martinez does not apply, and those reasons are stated clearly in the brief. I think we can move to assuming that Martinez does apply to resolve the claims here. If Martinez does apply, there is no prejudice to Claiborne, because even putting his statement or his confession aside Could you back up for a minute and indulge me in seeing whether you can explain how does Martinez work, given Sexton and given what Martinez, I mean, where does the actual trial IAC issue come in? I mean, if you read Martinez, it comes in at a second level in a very low standard kind of way, which could matter here. Our Sexton opinion seems to, if you read Martinez, Sexton opinion seems to essentially decide the trial IAC claim as part of the Strickland on the PCR IAC, and I don't see how it could be both ways. Well, I think I'm going to try to explain Martinez as I think I understand it. I think you're right to a certain extent, Judge Berzon, on the IAC of resentencing counsel here would be on a second, that second question or second level, and I think there are some cases that can be decided on that, given the record. Now, there's going to be some cases that aren't going to be able to be decided, at least at this level, because of factual development that may be necessary to answer the question of whether there's deficient performance or prejudice. Really, we're talking about prejudice. So, and I think that's what the Sexton case did. It looked at the record and said, we can resolve this on that record. And I think in this case, it can be resolved on that record. If you look at the IAC. Well, in this case, the IAC part of it seems to be relatively easily resolved, and you don't even argue otherwise because the PCR, I mean the PCR IAC, because the PCR. The unprofessional part. Yeah, they couldn't even file a cognizable Rule 32 petition. Right, the deficient performance part of. Right, right. So, the second prong. So, Martinez has the two prongs. First, the ineffective assistance of the PCR counsel. Second, a substantial claim of ineffective assistance of trial counsel. On the PCR counsel, if I understood your briefs correctly, you conceded that he was deficient. Is that correct? I think there is deficient performance in this case. So, then the question would be whether his deficient performance would have made any difference, I guess, at the PCR stage, correct? Well, would it have made any difference? And I think in Sexton, the court looked at, in answering that question, you have to look at whether the claim below would have been a substantial claim. So, you have to look at the ineffective assistance of trial counsel. I think Sexton, if I'm recalling, and I was on the panel, but my memory is still vague, but I think that was decided on the deficiency part of Strickland. So, looking at the first prong of ineffective assistance of PCR counsel, Sexton determined that the trial, that PCR counsel was not deficient because the underlying claim was not very strong or was not a winner. Right. But we don't have that here, right? Because we've. . . You can look at it both ways. I mean, essentially. . . But it makes a difference because the standard's different, arguably. In other words, the Martinez articulation of its trial IEC inquiry is something like colorability. It's. . . It was a CF site to. . . Right. But let me ask you about that because we now have this new decision, Cook v. Schrierow, which defined the second prong, the substantial claim, as meaning it has some merit and defined has some merit in terms of Strickland, whether counsel's performance was unreasonable under prevailing professional standards and there is a reasonable probability that for counsel's unprofessional errors, the result would have been different. So, do we then. . . Is even the second prong, the substantial claim, now we're also looking at it under the Strickland? Yes, I think you have to. I mean, in order to find deficient performance and prejudice of PCR counsel, you necessarily have to look at the underlying IEC claim that should have been raised below or that's alleged. And the only way to do that is to look at that substantive claim that could have been raised or is alleged to not have been raised. If it wasn't raised and the record wasn't developed, how can you sensibly do that? And isn't that why Martinez had a more deferential standard? In other words, you have to have some kind of development before you can make on the merit Strickland decision ordinarily. I understand Sexton may have been different, but ordinarily. And here, I mean, including here. I think the problem with this case is that PCR counsel did, in fact, raise this issue. Now, I know the district court, the ineffective assistance of resentencing counsel for failing to provide more mental health. Mental examination. Right. The confession part. The confession part is different. Right. So I guess we should stick with one before we get to the other. And I'll try to stick with the confession because that's what we're really talking about. So that's something not raised by the PCR counsel, not commented upon by the trial court or anybody else after that. That's correct. We just have nothing with regard to that until in this post-Martinez world, we have the issue plopped down in front of us. Right. And to some extent, this is really a legal issue that the court can look at, much like the court did in Sexton. Well, it's a legal issue. I mean, you argued in your brief, and I don't know whether you're sticking to it, that there's a legal issue as to whether the confession was unconstitutionally relied upon in the resentencing. And I don't know whether you intend to argue that. But if one gets beyond that, then it's a legal issue that depends on a factional record. Well, I think the legal – well, I'm not – from what you phrased, I'm not sure I understand that to be my argument. Why don't you argue whatever you want to argue. Right. I think what we can do is we can assume that that confession shouldn't have been in. Okay. Let's assume that. Let's assume that. Can you tell us – it would be helpful to me, and I think all of us, if you basically went through the same exercise that we asked your opponent, what was in the record and what should we make of it other than the confession? Absolutely. So if the confession is not part of the calculus here, the sentencing court had before it sufficient evidence of the cruelty aggravating factor. Can I have this Bashir's thing? I'm sorry? This Bashir's thing. Was that there or not? You don't mention it in your brief. He doesn't mention it in his brief. Right. And the trial court never mentioned Bashir's. And I think what happened is Bashir's was part of the federal habeas evidentiary record that became part of the record that the trial court looked at. Now, when I went through the record and I looked for the record on appeal from the resentencing, it appeared that all of the documents that were admitted in the federal evidentiary hearing were brought back to state court for the resentencing. And the resentencing court had all of that information available. Now, the problem here is that the state court, the resentencing court, doesn't mention anything about Bashir's. And it had five volumes of record from that evidentiary hearing. So I think... It doesn't mention anything about any of this because it wasn't considering, it was considering the confession in, not out. It clearly was relying on the confession, and our question is what if it wasn't? Well, right. And the question, if you weren't, or if the resentencing court did not have that confession before it, there still was sufficient evidence. Because Claiborne made statements to other individuals. He made statements to Shirley Martin. And Shirley Martin's, the statements that Claiborne made to Shirley Martin at supplemental excerpts of record 263, 290, 291, and 264 related, Claiborne related to Shirley Martin that prior to strangling the victim, she was begging him not to do it, but he told her that if he didn't, they would kill him. She also, or he, Claiborne also told Shirley Martin in one of the four conversations that he had with her about this murder, that the victim was begging him not to kill her while they were in the house. So right there is enough evidence to show mental anguish. When you add that. It's not just enough. One of the things that's hard here is that it may be sufficient as a court of appeals ordinarily reviews sufficiency, but this is in the first instance. It's really the other way around. Is it so sufficient that it's simply improbable? It's not a reasonable possibility that a sentence other than death would have been imposed. Yes, I think it is that type of evidence that there is. Death would have been imposed given those statements along with the medical examiner's testimony regarding the bruising, the defensive wounds, and all of the other injuries that were testified to. You add on to that the statements that Claiborne made to the two corrections officers that was part of the record at resentencing and his confession to Detective Bustamante aside, his statements to corrections officer Scott Simmons almost mirrored what he told Detective Bustamante. Now these two things or at least the statements that Claiborne made to Shirley Martin and the medical examiner's testimony were part of the record that the Arizona Supreme Court relied on when it found sufficient evidence for the aggravating factor of cruelty. But it certainly relied on some things that were only in the confession, like the six hours. Sure. The six hours was only in the confession. And that's something that the Arizona Supreme Court said or had in their opinion as well. They made her walk around naked. Serving drinks.  That information was part of Claiborne's confession. But the information regarding the mental anguish that went to the victim, which is part of the cruelty aggravating factor in Arizona, only came from Claiborne through Shirley Martin. And that is sufficient evidence. And Shirley Martin both testified and there were interview statements that she made. There were interview statements that she made.  When she was cross-examined by defense counsel, original defense counsel, there was reference to interviews that they had. Now I don't believe I've seen those interview transcripts. I'm not sure they were transcribed. They were just referenced in her testimony at trial. But there certainly was sufficient evidence to show that Claiborne would not get anything less than death taking his confession out of the calculus here. So I think with that record, the court can simply look at the Martinez issue, look through the IAC of PCR counsel to see if there was in fact a substantial claim on the confession. And it's a different story with the mental health experts. Nothing has ever been proffered regarding what additional information could have been presented or what additional information. But how would there be if the question was essentially defaulted? Well, and I know the district court found this claim defaulted, and I know the State argued in the habeas answer that it was defaulted, but the State also argued on the merits in the alternative. If you look at the minute entry order from the PCR denial, the judge denies the PCR but makes an alternative merits ruling with respect to the claim that there was ineffective assistance of counsel for failing to do an additional mitigation investigation or call additional mental health experts. And there was nothing presented. Because he didn't present anything? So we're back to the IAC. Right, but we don't know what the reason for that is. Right, we don't. That's why you have a Martinez problem. Essentially under Martinez you'd seem to start over again. So the PCR court had an alternative ruling on the merits, correct? That's the way I read it. And then is that entitled to epidefference even though it also had a procedural bar determination? My argument would be that it would be entitled to epidefference if this court were to not give it epidefference. It certainly would go to the substantiality of the claim, having a State court already looked at what was presented. Because Martinez only gets us cause to overcome the procedural bar and then we still have to review the claim. We would normally review that claim de novo, but if there is an adjudication on the merits, where does that leave us? I think it takes you out of Martinez and I believe I argue that in the brief. How can that make any sense when they've already decided that the claim was not presented properly and so there's no record. Well, obviously there's no record because the IAC, the PCR lawyer just didn't do his job at all. So if the State court decides, chooses to decide it even though there's no record because the trial lawyer, the resentencing lawyer didn't make any record, doesn't that just collapse into the procedural default? In other words, they're deciding something when it was defaulted. It wasn't even presented really. It's a hard question in this case because the reason the court summarily denied on procedural basis the PCR was the fact that a certification page wasn't attached to the PCR. Well, what they say with regard to that issue is Petitioner has discussed above. Petitioner has not submitted any support for these claims as required by Rule 32.5. So essentially they're saying it's because it was defaulted. So they're just bringing the default back in again. But wait, the claim is the ineffective assistance of resentencing counsel, right? It's not ineffective assistance of PCR counsel. That's the basis for getting over the procedural bar. So the question is whether the resentencing counsel was ineffective for what he, for not getting new psychological evaluation back in the 1997 resentencing hearing. Correct. So that's a fixed record, right? That is a fixed record. And when you look at that record and you see the amount of information that resentencing counsel gave to the three experts that either evaluated Claiborne or met with him prior to trial and one of them testified at trial, when you see the amount of robust information that was given to them and what they testified to at the evidentiary hearing, you can clearly see that perhaps there was nothing more to do at resentencing than present those witnesses because those witnesses had already testified, had already looked through a lot of information about his history, his mental health history, were cross-examined by the state, and that information was granted relief. So it was reasonable for resentencing counsel to simply take those records and go back to state court when it was still judge sentencing and try to convince the judge that it warranted leniency in this case. Can you discuss the certified question briefly? The Eddings claim? Yes. The Arizona Supreme Court did not violate the rule in Eddings in this case. It clearly considered all of Claiborne's proffered mitigation. How do we know that? I mean, it considered his personality traits, which it said were grounded in his mental health, but the ones they chose to use were ones that, I mean, it seems to me the unspoken sentence was these had something to do with the crime. In the next paragraph, they say unequivocally that they're not going to look at his personal history because it wasn't connected to the crime. So it appears that they were applying what was the law in Arizona at the time, which is there had to be a causal nexus. We disagree on whether there was law at the time in Arizona that a causal nexus test was used. Putting that aside. It would help me if you talked about that. Okay. In our brief, we laid out the history in Arizona ever since Lockett, and Arizona changes statute after Lockett to provide that any proffered mitigation evidence would be considered. Ever since then, even after Eddings, cases like State v. McMurtry, which cited to Eddings to follow what Eddings basically said, you have to consider proffered mitigation. Now, the causal nexus language that the Arizona Supreme Court used in prior cases essentially came out of the statutory mitigation analysis because in statutory mitigation, and I don't like to delineate between statutory and non-statutory. Mitigation is mitigation. But in Arizona, if you're going to ask the court to sentence you to something other than death based on G1 or G2, one of the statutory mitigating factors, the court used a test to put weight to that mitigation. Now, that weight, that causal nexus, never precluded a defendant from presenting that information to the trial court. Now, the statutory mitigators went to what happened at the time of the crime. And then the Arizona Supreme Court, in past cases, went on language saying even if it's not statutory mitigation, we must consider it as non-statutory. And then it considered the relevance and gave it whatever weight it put forth. Now, there are cases like Williams where this court found that the causal nexus test that was used precluded consideration. So in Williams, they presented the drug use in the sentencing phase, and the trial court said, well, I'm not going to consider it because it doesn't appear to be mitigation of any kind. And I think that was the problem that this court had with that test in that particular case. Well, what is the difference between I'm not going to consider it and I'm going to consider it but give it no weight? Well, I think it's a cause. No weight because it has no causal connection. Well, I don't think that's what the court did in this case. I know, but I gather that's your position. Well, I think Arizona's position is this. If the court says in your hypothetical, I'm going to consider it, but I'm not going to give it any weight because it's not connected to. I think all the Constitution requires is that the court consider the evidence. So your position is that that would be a legal position? Yes. Maybe what Towery says, too. I believe it is because, obviously, if the court said, well, there's no connection here, so I'm not going to consider it, and I think that is a problem, okay? I'm not going to consider it at all. Like in Williams, when the court said, it's not mitigation of any kind. Well, I'm afraid that I don't see any actual difference, but I do understand your argument and I understand it's been accepted at least once. Right, and I think in this case, you can't look at the law or have a law at the time in Arizona use this nexus test because I think you have to look at each case individually, and I think that's what Shadd. Is that the way the Arizona Supreme Court operates? It does everything differently every time? One time it says it's no good unless it has a nexus. The next time they can do the opposite? No, that's not how it works. In fact, the Arizona Supreme Court clearly disagreed with this court in Stiers. When this court found that the Arizona Supreme Court in its independent review did not consider Stiers as post-traumatic stress disorder and sent it back for re-independent review, the Arizona Supreme Court clearly found that they disagreed with this court's reading because it said it considered all of Stiers as proper mitigation, much like they did in this case, much like in Lopez v. Ryan. So is it the Arizona Supreme Court's view or its procedure is to comply with Lockett and Eddings? Absolutely, and they've said that. I mean, in recent cases they've said it. In Stiers they have said that. When the case came back from this court, they said they do consider all proper mitigation. Well, what about in this case, the next paragraph about his personal history? Didn't they say plainly there that they're not considering it because it has a causal nexus? I'm sorry, where? In the paragraph 35. I see that. So what you're asking us here to assume is that for some reason, which it's hard to figure out why anybody would do this, that they precluded the consideration of one thing for no causal nexus but not the other one. No, I don't think that. I think they considered his family and he was able to present his family background and history to the court and the court simply said this really isn't relevant to anything. And I think that's within the purview of a state court. When they consider mitigation evidence, they can attach whatever relevance they feel is necessary. And that's exactly what they're doing here in this opinion. You know, Claiborne wasn't precluded from presenting anything here. This isn't like in Texas when there was preclusion of evidence going to the trier of fact. But the state supreme court says as a matter of law it's not relevant. I don't understand how that's any different than saying, you know, you can talk all you want but we're not listening. The difference is this. You know, at the front end, the court could say, we're not going to let you present any mitigation regarding family history. But that didn't happen here. You know, that would be a problem if certain categories of mitigating evidence were simply precluded. If the court said you can present it but in a Supreme Court decision they say, the trial court did not err by accepting the evidence but it's not relevant and we will not consider it, that would presumably be a problem under Eddings. If they don't consider it, yes, in their independent review. The ability to present, the court is expected to consider, and you can lead a horse to water, you can't make him drink. Okay, the Supreme Court says you've got to put it on the table. If the court says we don't think that counts, we're not going to think about it, you've got a violation. And the problem was that Judge Berzon's raising, and I've struggled with it too, is that enough to say, okay, we've considered it, but we don't think it counts for anything for the same reason, which is it didn't affect the crime. Is that a violation of Eddings? I don't think it is. I think if they consider it and give it whatever effect they think is... So they can give it weight down to zero as long as they... As long as they consider it. Doesn't Eddings say specifically that they can't give it weight down to zero? I'm sorry? Doesn't Eddings specifically say they can't give it weight down to zero, they have to give it some weight? No, I think Eddings said you can't preclude the consideration of that evidence as a matter of law. And I think Oklahoma had a law, or their law at the time was, that you couldn't have your family's social history as a mitigating factor. So the trial court in that case said, as a matter of law, I can't consider it. So it's a little different. I mean, here... What Eddings says is they may not give it no weight by excluding such evidence from their consideration. So you're saying, but they can give it no weight by saying we're considering it, that we're giving it no weight? They're not giving it any weight by excluding its consideration. Okay? That's the argument. I know it's... I think we're all semantically tangled up here. And it's hard, you know. But, I mean, the Constitution requires that the sentencer be present... or that a defendant be allowed to present any relevant mitigation. And it obligates the sentencer to consider it. But that's where the mitigation jurisprudence ends. And that's what the Supreme Court said in Kansas v. Marsh. So if it ends there, they can give it whatever weight they want. And if it's not relevant... Say, for example, a defendant raises mitigation that simply is not relevant to anything. But it's considered. And the court says, well, it really has no relevance here. And we give it no weight. Or we give it very little weight. I think that's perfectly fine for a state court to do under the Constitution. If the court doesn't have any further questions, I'll rely on the arguments in my brief. Thank you. Thank you very much. We'll give you two minutes for rebuttal. Just very briefly, I think I want to try to answer the question that Judge Clifton poses. With respect to semantically untangling what's going on here, I think that what happens is what the Arizona Supreme Court says ultimately becomes law. And that's why I started out with the speech I started out with about this test is just unfair. And no matter where you apply it, that unfairness is going to seep into these cases. And it's going to seep into the case law. So if the Arizona looks at something and says, well, we don't give that any weight. Or we don't give that very much weight. Or we don't consider that because it didn't cause the crime. As soon as they say that, as soon as they put that in one of their cases, then that's part of Arizona's case law. And that's what gets applied from there on out. So anytime somebody says causal nexus, it's going to create a problem. Anytime the Arizona Supreme Court says causal nexus. Well, the representations being made is they didn't exactly say that. And either in this case or in the other cases. They didn't say we're not going to consider it. Because it wasn't connected to the crime, we're not going to give it any weight. Or something like that. Right. The short answer to that is Abdul Kabir v. Quarterman in 2007. The Supreme Court says, of course, our reference to exclusion of the evidence did not refer to its admissibility, but rather its exclusion from meaningful consideration by the jury. And in Penry 2, they say that the key in Penry 1 is that the jury must be able to consider and give effect to. And they italicize. So you're saying essentially the Arizona Supreme Court confessed error about all of its prior ettings jurisprudence. Or non-ettings jurisprudence. I don't think they confessed error. I mean, that's shorthand. But as it characterizes prior law, it's consistent with your version. That's what you're saying. Their prior law... I don't want to use up all of this court's time. I'll work as long as the court wants. No, well, we're about done. So if there's anything else you're dying to say, you can say it in a sentence. I think that's all I have. Okay, thank you very much. Thank both of you for a very useful argument.
judges: Berzon, Clifton, Ikuta